ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 13 2019

at 5 o'clock and 00 min. P M
SUE BEITIA, CLERK

1  Peter Strojnik,
2  2375 East Camelback Road Suite 600
   Phoenix, Arizona 85016
3  Telephone: (602) 524-6602
   ps@strojnik.com
4  *pro se*

CV19 00077 SOM KJM

5
   **UNITED STATES DISTRICT COURT**
6  **DISTRICT OF HAWAII**

7                                        Case No:
8                                        **COMPLAINT**
   Peter Strojnik,
9                                        1. **Americans with Disabilities Act**
10                         Plaintiff,    2. **Discrimination in Public Accommodations (State Law)**
11                                       3. **Nondisclosure**
12              vs.                      4. **Consumer Fraud**
                                         5. **Negligence per se**
13  (1)  Kapalua Land Company LTD dba    6. **Threats 42 USC §12203 and 28 CFR §36.206**
    The Kapalua Villas Maui (Defendant 1);
14  (2) Richard Rand and Marr Jones Wang, a
    limited Liability Partnership (Defendant 2)
15                                       **JURY TRIAL REQUESTED**
16
17                         Defendants.

18  Plaintiff brings this class action pursuant to the (1) Americans with Disabilities Act, 42
19  U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and ADAAG
20  ("ADA"), (2) Chapter 489 of the Hawai'i revised statutes, Chapter 489, Discrimination
21  in Public Accommodations §§489-1 *et seq* ("HRS"),  (3) Nondisclosure and
22  Misrepresentation, (4) Consumer Fraud HRS Chapter 480 (5), negligence per se and (6)
23  violation of 42 USC §12203 and 28 CFR §36.206.
24                                 **PARTIES**
25  1. Plaintiff is an ADA Tester.
26  2. Plaintiff is An immigrant, a veteran of the US Army[1] and a disabled person as defined
27     by the ADA and HRS Chapter 489. Plaintiff is a single man currently residing in
28  _____
    1
    DMZ '72 - '74

FSC : SUMMONS, COMPLAINT, R. 16, WAIVER, CONSENT, RECPT.
CC: SOM/KJM/PT

Mailed On
Date 2/14/19

Received By Mail
Date 2/13/19

Maricopa County, Arizona. Plaintiff is and, at all times relevant hereto has been, legally disabled by virtue of a severe right-sided neural foraminal stenosis and femoral neuropathy, prostate cancer and renal cancer, degenerative right knee and is therefore a member of a protected class under the ADA and HRS Chapter 489.

3. Plaintiff suffers from physical impairments described above which impairments substantially limit his major life activities. Plaintiff walks with difficulty and pain and requires compliant mobility accessible features at places of public accommodation. Plaintiff's impairment is constant, but the degree of pain is episodic ranging from dull and numbing pain to extreme and excruciating agony.

4. Defendant 1 owns, operates, leases or leases to a lodging business ("Hotel") located at 2000 Village Rd., Lahaina, HI 96761 which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A).

5. Defendant 2, Richard Rand and Marr Jones Wang are Hawaii's lawyer / lawfirm, respectively, who have caused the events alleged in Count one to occur in Hawaii.

6. Defendant Richard Rand is an agent of Defendant Marr Jones Wang. Defendants Rand and Marr Jones Wang are jointly agents of Kapalua Land Company LTD dba The Kapalua Villas Maui.

## JURISDICTION AND VENUE

7. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§ 28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

8. Plaintiff brings this action as a private attorney general who has been personally subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28 CFR §36.501.

9. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,* Plaintiff's claim for equitable nominal damages.

10. Venue is proper pursuant to 28 U.S.C. § 1391.

11. The ADAAG violations in this Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes

discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

12. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability.

13. Plaintiff intends to visit Defendant 1's Hotel at a specific time when the Defendant 1's noncompliant Hotel becomes fully compliant with ADA; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

## COUNT I
### (Violation of Plaintiff's Civil Rights under the ADA)
(Against Defendant 1 Only)

14. Plaintiff realleges all allegations heretofore set forth.

15. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

16. Plaintiff intended to vacation in Hawai'i and therefore, reviewed vacation booking websites as documented in Addendum A.

17. Plaintiff became aware that third party booking websites disclosed general availability and description of Defendant 1's Hotel. Third Party booking websites referenced here are more fully documented in Addendum A which is by this reference incorporated herein.

18. Third party booking websites failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant 1's Hotel meets his accessibility needs as more fully documented in Addendum A.

19. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

20. Thereafter, Plaintiff became aware that Defendant 1's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant 1's Hotel meets his accessibility needs as more fully documented. *See* Addendum A.

21. Plaintiff also became aware that Defendant 1's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

22. Because third and first party booking agents failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant 1's Hotel meets his accessibility needs Plaintiff declined to book a room there and because Plaintiff was unable to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms, Plaintiff declined to book a room there.

23. The gist of the requirement of 28CFR§28.302(e) is the requirement that a place of lodging, such as Defendant 1's Hotel, disclose both the *accessible* elements but, more importantly, *inaccessible* elements of the place of lodging; without a description of *inaccessible* mobility elements, Defendant 1 fails to comply with 28CFR§28.302(e) as a matter of law.

24. Defendant 1 has violated the ADA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above and in Addendum A.

25. The ADA violations described in Addendum A relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment of the Hotel.

26. As a result of the deficiencies described above, Plaintiff declined to book a room at Defendant 1's Hotel.

27. The removal of accessibility barriers listed above is readily achievable.

28. As a direct and proximate result of ADA Violations, Defendant 1's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant 1's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and

    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C. Injunctive relief order to alter Defendant 1's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E. Equitable nominal damages; and

    F. For costs, expenses and attorney's fees; and

    G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

**COUNT II**
**(Violation of the Hawai'i's Chapter 489, Part I)**
(Against Defendant 1 Only)

29. Plaintiff realleges all allegations heretofore set forth.

30. Defendant 1 has violated Hawai'i's Chapter 489 Part I by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above and in Addendum A.

31. Plaintiff has been injured by the unlawful discriminatory practices alleged in this Complaint.

32. Pursuant to HRS §489-7.5, Plaintiff is entitled to -

    ▪ Sue for damages sustained, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys' fees together with the costs of suit, and

- Bring proceedings to enjoin the unlawful discriminatory practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys' fees together with the cost of suit.

33. Plaintiff is deterred from visiting the Hotel and is thereby suffering daily actual and statutory damages.

WHEREFORE, Plaintiff demands judgment against Defendant 1 as follows:

A. A Declaratory Judgment that at the commencement of this action Defendant 1 was in violation of the specific requirements of the statute; and

B. A permanent injunction which directs Defendant 1 to take all steps necessary to bring its Hotel into full compliance with the requirements set forth in HRS, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, disabled individuals as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant 1 certifies that its facilities are fully in compliance with the relevant requirements of the Statutes to ensure that Defendant 1 has adopted and is following an institutional policy that will in fact cause Defendant 1 to remain fully in compliance with the law; and

C. The payment of costs of suit including attorney's fees and expenses; and

D. Order closure of the Defendant 1's Hotel until Defendant 1 has fully complied with the ADA and HRS; and

E. For damages in an amount no less than $1,000.00 per violation per encounter per day; and

F. For treble damages pursuant to HRS §489-7.5(c).

G. The provision of whatever other relief the Court deems just, equitable and appropriate.

## COUNT III
**(Nondisclosure – Restatement (Second) of Torts §551)**
(Against Defendant 1 Only)

34. Plaintiff realleges all allegations heretofore set forth.

35. In Hawai'i, claims for nondisclosure are governed by the Restatement (Second) of Torts § 551 (Am. Law Inst. 1977)[2].

36. Defendant 1's Hotel is subject to the requirements of 28 CFR §36.302[3].

---

[2] **Restatement of Torts: 551. Liability For Nondisclosure**

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

[3]
**28CFR§36.302 Modifications in policies, practices, or procedures.**

(a) *General.* A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

(b) ...

(c) ...

(d) ...

(e) (1) *Reservations made by places of lodging.* A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—

(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals

37. The gist of the requirement of 28CFR§28.302(e) is the requirement that a place of lodging, such as Defendant 1's Hotel, disclose both the *accessible* elements but, more importantly, *inaccessible* elements of the place of lodging; without a description of *inaccessible* mobility elements, Defendant 1 fails to comply with 28CFR§28.302(e) as a matter of law.

38. Defendant 1's Hotel was under a duty to disclose both *accessible* and *inaccessible* elements on its first and third party websites in enough detail to reasonably permit individuals with disabilities, including the Plaintiff, to assess independently whether a given hotel or guest room meets his or her accessibility needs all as more fully disclosed in Addendum A.

39. Defendant 1's disclosure and identification of *accessibility* and *inaccessibility* elements was insufficiently detailed to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs all as more fully disclosed in Addendum A.

40. Defendant 1's third party and first party booking websites made partial disclosures of accessibility which were known to Defendant 1 to cause them to be misleading.

41. The disclosure of *accessibility* and *inaccessibility* elements were facts basic to the transaction of booking a room at the Defendant 1's Hotel.

---

with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

(iii)    Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv)    Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v)    Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

(2) *Exception.* The requirements in paragraphs (iii), (iv), and (v) of this section do not apply to reservations for individual guest rooms or other units not owned or substantially controlled by the entity that owns, leases, or operates the overall facility.

(3) *Compliance date.* The requirements in this section will apply to reservations made on or after March 15, 2012.

42. The partial disclosure of accessibility on Defendant 1's third and first party websites created the impression of two interpretations: One that the hotel was fully ADA compliant and the other that it was not.

43. Plaintiff has been damaged by the nondisclosure.

44. Defendant 1's conduct raises the presumption of conscious indifference to consequences of its actions which, in turn, demonstrates wanton or oppressive acts or malice as implies a spirit of mischief or indifference to civil obligations, or willful misconduct, entitling Plaintiff to an award of punitive damages in an amount sufficient to deter Defendant 1 and others similarly situated from similar misconduct.

WHEREFORE, Plaintiff prays for relief as follows:

A. For a finding of liability of Defendant 1 on this Count; and

B. For damages assessed in favor of Plaintiff in an amount to be determined at trial; and

C. For punitive damages in an amount sufficient to deter this Defendant 1 and others similarly situated from similar misconduct; and

D. For costs, fees, expenses and attorney's fees in an amount to be proven; and

E. For such other and further relief as the Court may deem just and proper.

## COUNT IV
### (Consumer Fraud – HRS Chapter 480)
(Against Defendant 1 Only)

45. Plaintiff realleges all allegations heretofore set forth.

46. HRS §480-2 declares unlawful all unfair or deceptive acts or practices in the conduct of any trade or commerce.

47. Defendant 1's Hotel committed unfair and deceptive acts or practices in the conduct of its lodging business s more fully detailed in Counts I – IV above all of which are by this reference incorporated herein.

48. Plaintiff is a "consumer" as this term is defined in HRS §480-1.

49. HRS Chapter 480 is intended not only to protect the persons who actually purchased goods or services as a result of unfair and deceptive acts and practices, but also those

who attempted or were solicited to do so. *Zanakis-Pico v. Cutter Dodge, Inc.*, 47 P.3d 1222 (Haw. 2002)

50. Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit; provided that where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit. In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5; and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.

51. Plaintiff has been damaged by Defendant 1's unfair and deceptive acts or practices in the conduct of its lodging business s more fully detailed in Counts I – IV above all of which are by this reference incorporated herein.

52. Defendant 1's conduct raises the presumption of conscious indifference to consequences of its actions which, in turn, demonstrates wanton or oppressive acts or malice as implies a spirit of mischief or indifference to civil obligations, or willful misconduct, entitling Plaintiff to an award of punitive damages in an amount sufficient to deter Defendant 1 and others similarly situated from similar misconduct.

WHEREFORE, Plaintiff prays for relief as follows:

A. For a finding of liability of Defendant 1 on this Count; and

B. For damages assessed in favor of Plaintiff in an amount to be determined at trial; and

C. For punitive damages in an amount sufficient to deter this Defendant 1 and others similarly situated from similar misconduct; and

D. For costs, fees, expenses and attorney's fees in an amount to be proven; and

E. For such other and further relief as the Court may deem just and proper.

## COUNT V
**(Negligence per se)**
(Against Defendant 1 Only)

53. Plaintiff realleges all allegations heretofore set forth.

54. Defendant 1 had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

55. Defendant 1 breached this duty.

56. Defendant 1 is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[4].

57. Defendant 1 knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

58. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[5].

59. Defendant 1's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

60. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[6].

61. Defendant 1's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

---

[4] 42 U.S.C. § 12101(a)(2)
[5] 42 U.S.C. §12101(a)(3)
[6] 42 U.S.C. §12101(a)(5)

62. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[7].

63. Defendant 1's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

64. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[8].

65. Defendant 1's knowing, and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

66. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[9].

67. Defendant 1's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant 1's knowing and intentional damage to Plaintiff.

68. Defendant 1's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

69. By violating Plaintiff's civil rights, Defendant 1 engaged in intentional, aggravated and outrageous conduct.

70. The ADA has been the law of the land since 1991, but Defendant 1 engaged in a conscious action of a reprehensible character, that is, Defendant 1 denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation

---

[7] 42 U.S.C. §12101(a)(6)
[8] 42 U.S.C. §12101(a)(7)
[9] 42 U.S.C. §12101(a)(8)

to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

71. Plaintiff has been damaged by Defendant 1's unfair and deceptive acts or practices in the conduct of its lodging business s more fully detailed in Counts I – III above all of which are by this reference incorporated herein.

72. Defendant 1's conduct raises the presumption of conscious indifference to consequences of its actions which, in turn, demonstrates wanton or oppressive acts or malice as implies a spirit of mischief or indifference to civil obligations, or willful misconduct, entitling Plaintiff to an award of punitive damages in an amount sufficient to deter Defendant 1 and others similarly situated from similar misconduct.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligence; and

    B. For damages in an amount to be proven at trial; and

    C. For punitive damages to be proven at trial; and

    D. For such other and further relief as the Court may deem just and proper.

**COUNT VI**
**(Violation of 42 USC 12203 and 28 CFR 36.206)**
**(Against Defendants 1 and 2)**

73. Plaintiff realleges all allegations heretofore set forth.

74. Defendant Richard Rand is an agent of Defendant Marr Jones Wang. Defendants Rand and Marr Jones Wang are jointly agents of Kapalua Land Company LTD dba The Kapalua Villas Maui.

75. On January 21, 2019, Plaintiff issued to Defendant 1's general manager, Bill Rees, a *Courtesy Notice of Potential Litigation.* Addendum B.

76. On February 5, 2019, Plaintiff received a response from Defendant Richard Rand, a lawyer with Marr Jones & Wang. Addendum C.

77. Plaintiff believed in good faith that the February 5, 2019 response by Defendant Rand was poorly researched and that Mr. Rand's understanding of 28CFR36.302 was de minims.

78. As a courtesy explanation of issues relevant to the *Courtesy Notice of Potential Litigation*, Plaintiff e-mailed a letter to Mr. Rand explaining the scope of 28 CFR 36.302. Addendum D.

79. Defendant Rand did not take kindly to Plaintiff's explanation and issued a responsive letter to Plaintiff on February 11, 2019. Addendum E. In this letter, Defendant Rand interfered, coerced and intimidated Plaintiff by threatening to file charges against Plaintiff with the Arizona State Bar for Plaintiff's exercise of his rights under the ADA.

80. Defendant Rand made certain that no further communication with Plaintiff would ensue. Addendum F.

81. 42 USC §12203(b) and (c) provide:

> **(b)INTERFERENCE, COERCION, OR INTIMIDATION**
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

> **(c)REMEDIES AND PROCEDURES**
> The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III, respectively.

82. 28 CFR §36.206 further provides:

> **CFR § 36.206 Retaliation or coercion.**
>
> (a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
>
> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or

her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

83. Defendant Rand and Defendants Marr Jones Wang and Kapalua Land Company LTD dba The Kapalua Villas Maui through the principles of agency, violated 42 USC §12203 and 28 CFR §36.206, entitling Plaintiff to remedies pursuant to 42 USC §§ 12117, 12133, and 12188.

**WHEREFORE,** Plaintiff prays for relief as follows:

A. For finding that Defendants violated 42 USC § 12203 ND 28 CFR §36.302; and

B. For all relief pursuant to 42 USC §§ 12117, 12133, and 12188; and

C. For such other and further relief as the Court may deem just and proper.

1

2

### REQUEST FOR TRIAL BY JURY

3

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

4

DATED this 11th day of February 2019.

5

6

**PETER STROJNIK**

7

Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

# ADDENDUM A

2

3

## 3RD PARTY BOOKING WEBSITE – GENERAL ACCESSIBILITY INFORMATION

www.hotels.com

4

5

## NO ACCESSIBILITY INFORMATION

6

**Main amenities**

7
- ✓ 280 smoke-free condos
- ✓ Near the beach

8
- ✓ 8 outdoor pools
- ✓ 2 outdoor tennis courts
- ✓ Air conditioning

9
- ✓ Garden
- ✓ Car rentals on site

10
- ✓ ATM/banking services
- ✓ Laundry service

11
- ✓ Gift shops/newsstands
- ✓ Picnic area

12
- ✓ Barbecue grills
- ✓ Free WiFi and free parking

**Feel at home**
- ✓ Kitchen .
- ✓ Cookware, dishware, and utensils
- ✓ Microwave
- ✓ Full-sized refrigerator/freezer
- ✓ Garden
- ✓ Iron/ironing board

13

14

### About Kapalua Villas Maui, Lahaina

15
**Location.**
The Kapalua Villas Maui beachfront resort is located along 3 Kapalua Bay beaches in Lahaina, Maui, Hawaii. A total of 1,600 acres provides the tropical landscape for the villas, and the neighboring Ritz-Carlton Kapalua and Kapalua Bay.

16
**Resort Features.**
More than 12 resort-complex restaurants include Kai Sushi Restaurant, the signature Banyan Tree restaurant, and the Alaoa Lounge. Culinary offerings range from gourmet French and Italian, to Pacific Rim and Hawaiian. The Honolulu Store is nearby and offers hot breakfasts and deli-style lunches, as well as a full-service espresso bar. One of the resort complex' championship golf courses was designed by Arnold Palmer, and use of the resort's 2 outdoor lighted tennis courts is complimentary. The resort complex houses the Kapalua Golf Academy that offers professional golf instruction. On-site shops offer island-inspired merchandise and fine jewelry. A complimentary shuttle transports guests throughout the resort upon request. Self-parking and WiFi are included in the daily resort fee. At The Kapalua Villas there are 8 swimming pools located throughout for use (3 pools in the Bay Villas; 3 pools in the Golf Villas; 2 pools in the Ridge Villas).

17

18

**Guestrooms.**
The Kapalua Villas Maui offers 280 oceanfront, ocean-view, or fairway-view villas with one, two, or three bedrooms. Floor plans include townhouses, and loft-style or one-level units. All units feature full kitchens and air conditioning. Cable television is offered in bedrooms and living rooms. Accommodations include CD and DVD players. Housekeeping is available on request.

19

20

21

22

23

24

25

26

27

28

**Key facts**

**Size**
- 280 rooms

**Arriving/leaving**
- 84% of customers were happy with check-in
- 24-hour check-in
- Check-out time is 11 AM

**Required at check in**
- Credit card or cash deposit required
- Government-issued photo ID required

**Travelling with others**

**Children**
- ✔ No cribs (infant beds)

**Pets**
- ✔ Pets not allowed

**Internet**
- ✔ Free WiFi in public areas
- ✔ Free WiFi in rooms

## At the resort

| | |
|---|---|
| Food and drink | Barbecue grills |
| Things to do | Golf lessons on site  \|  Ecotours nearby  \|  Golfing nearby  \|  Hiking/biking trails nearby  \|  Kayaking nearby  \|  Mountain biking nearby  \|  Parasailing nearby  \|  Sailing nearby  \|  Scooter/moped rentals nearby  \|  Scuba diving nearby  \|  Segway rental/tour nearby  \|  Snorkeling nearby  \|  Surfing/boogie boarding nearby  \|  Water skiing nearby  \|  Windsurfing nearby |
| Services | Front desk (limited hours)  \|  Dry cleaning/laundry service |
| Facilities | ATM/banking  \|  Garden  \|  Picnic area |
| Languages Spoken | English |

## In the apartment

| | |
|---|---|
| Home comforts | Air conditioning  \|  Ceiling fan  \|  Coffee/tea maker  \|  Iron/ironing board |
| Things to enjoy | Furnished lanai |
| Freshen up | Hair dryer |
| Be entertained | Cable TV channels |
| Stay connected | Free WiFi  \|  Phone |
| Food and drink | Full-sized refrigerator/freezer  \|  Microwave  \|  Kitchen  \|  Cookware, dishware, and utensils |
| More | In-room safe |

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

1

2

3

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

4

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about 2018-01-03.

5

### 3RD PARTY BOOKING WEBSITE – ROOM DESCRIPTIONS

6

## NO ACCESSIBILITY INFORMATION

7

8



9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

1
2
3
4
5
6
7
8
9
10
11
12
13

## Villa, 2 Bedrooms, Ocean View (Gold) 

**Sleeps 6 people (including up to 5 children)**
**Bed choices**
- 1 King Bed and 2 Twin Beds

**Extra beds available**
- Sofa bed

More Info: 866-539-8117

**1 King Bed and 2 Twin Beds**
Furnished lanai with ocean views

**Layout** - 2 bedrooms, living room, and sitting area
**Internet** - Free WiFi
**Entertainment** - Cable channels and DVD player
**Food & Drink** - Kitchen with refrigerator, stovetop, oven, and microwave
**Sleep** - Linens
**Bathroom** - 2 bathrooms, free toiletries, a hair dryer, and towels
**Practical** - Washer/dryer, queen sofa bed, and free local calls
**Comfort** - Air conditioning
Non-Smoking
Room is accessed via exterior corridors

### Details
- Air conditioning
- Cable TV service
- Ceiling fan
- Coffee/tea maker
- Cookware, dishware, and utensils
- Free WiFi
- Full-sized refrigerator/freezer
- Furnished lanai
- Hair dryer
- In-room safe
- Iron/ironing board
- Kitchen
- Microwave
- Phone

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Golf Villas #14T3, 3 Bedroom, 2 Bath, Standard Fairway View 

**Sleeps 6 people (including up to 5 children)**
**Bed choices**
- 1 King Bed and 2 Queen Beds

**Extra beds available**
- Sofa bed

More Info: 866-539-8117

**1 King Bed and 2 Queen Beds**
Furnished lanai with ocean views

**Layout** - Bedroom, living room, and dining area
**Internet** - Free WiFi
**Entertainment** - Cable channels and DVD player
**Food & Drink** - Kitchen with refrigerator, stovetop, oven, and microwave
**Sleep** - Linens
**Bathroom** - Private bathroom, deep soaking bathtub
**Practical** - Washer/dryer, queen sofa bed, and free local calls
**Comfort** - Air conditioning
Non-Smoking
Room is accessed via exterior corridors

### Details
- Air conditioning
- Cable TV service
- Ceiling fan
- Coffee/tea maker
- Cookware, dishware, and utensils
- Free WiFi
- Full-sized refrigerator/freezer
- Furnished lanai
- Hair dryer
- In-room safe
- Iron/ironing board
- Kitchen
- Microwave
- Phone

1
2
3
4
5
6
7
8
9
10
11
12
13

**Bay Villas #20B2, 2 Bedroom, 2.5 Bath, Gold Oceanfront**   ⊗

**Sleeps 6 people** (including up to 5 children)
**Bed choices**
- 2 King Beds
**Extra beds available**
- Sofa bed

More Info: 866-539-8117

2 King Beds
Furnished lanai with ocean views

Layout - 2 bedrooms, living room, and dining area
Internet - Free WiFi
Entertainment - Cable channels and DVD player
Food & Drink - Kitchen with refrigerator, stovetop, oven, and microwave
Sleep - Linens
Bathroom - 2 bathrooms, free toiletries, a hair dryer, and towels
Practical - Washer/dryer, queen sofa bed, and free local calls
Comfort - Air conditioning
Non-Smoking
Room is accessed via exterior corridors

**Details**
- Air conditioning
- Cable TV service
- Ceiling fan
- Coffee/tea maker
- Cookware, dishware, and utensils
- Free WiFi
- Full-sized refrigerator/freezer
- Furnished lanai
- Hair dryer
- In-room safe
- Iron/ironing board
- Kitchen
- Microwave
- Phone

14
15
16

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient description of dispersion of accessible rooms among various categories of rooms.

17
18
19

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

20

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about 2018-01-03.

21
22

**1ST PARTY BOOKING WEBSITE - GENERAL ACCESSIBILITY INFORMATION**

https://www.outrigger.com/hotels-resorts/hawaii/maui/the-kapalua-villas

23

**NO ACCESSIBILITY INFORMATION**

24
25
26

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

27
28

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms

| | |
|---|---|
| 1 | in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. |
| 2 | **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about 2018-01-03. |
| 3 | **1ST PARTY BOOKING WEBSITE –ROOM DESCRIPTIONS** |
| 4 | |
| 5 | **NO ACCESSIBILITY INFORMATION** |
| 6 | **Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail |
| 7 | to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient description of dispersion of accessible rooms |
| 8 | among various categories of rooms. |
| 9 | **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal |
| 10 | access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel |
| 11 | or guest room meets his accessibility needs. |
| 12 | **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about 2018-01-03. |

22

1

# ADDENDUM B

2

3



**PETER STROJNIK**

2375 EAST CAMELBACK ROAD
SUITE 600
PHOENIX, ARIZONA 85016
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

4

5

January 21, 2019

6

Bill Rees Bill.rees@outrigger.com
Kapalua Land Company LTD dba The Kapalua Villas Maui
2000 Village Rd., Lahaina, HI 96761

7

Re: *Courtesy Notice of Potential Litigation*

8

Dear Mr. Rees:

9

I am a disabled veteran and an ADA tester. I intended to stay at your Hotel but noted that the Hotel does not provide equal access as required by 28 CFR Part 36, the 2010 Standards of Accessibility Design or HRS Chapter 489, Discrimination in Public Accommodations §§489-1 *et seq.* The hotel's non-compliance with the ADA and HRS Chapter 489 deter me from booking a room there although I intend to book it as soon as your facility becomes fully ADA and HRS compliant.

10

11

In the preparation of the attached draft Complaint, I gathered information from third party booking agent's website (hotels.com) and the hotel's 1st party booking website and other sources. Some of the information may be old or otherwise unreliable; therefore, let me know any corrections that should be incorporated into the draft complaint. Further, please review the attached 2010 Standards of Accessibility Design and, pursuant to 28 CFR §36.302(e), disclose which of the mobility requirements have not been met.

12

13

I strongly suggest that you consult with an attorney learned in ADA matters. This is a complex matter involving significant potential damages, attorney's fees, costs and expenses.

14

I request that you respond to this communication no later than 10 days from the send date. In the meantime, I am able to discuss this matter by phone and e-mail.

15

Sincerely,

16

Peter Strojnik

17

Encls. as indicated

18

19

20

21

22

23

24

25

26

27

28

1

**ADDENDUM C**

2

3 # MARR JONES & WANG

A LIMITED LIABILITY LAW PARTNERSHIP

4 *Labor and Employment Law*

5

6 February 5, 2019

7

*Via E-mail (ps@strojnik.com)*

8

9 Mr. Peter Strojnik
2375 East Camelback Road, Suite 600
Phoenix, Arizona 85016

10

**Re: Honua Kai Resort & Spa/Kapalua Villas Maui**

11

Dear Mr. Strojnik:

12

We are responding to your letters to Claudio Andrade regarding the Honua Kai Resort &
13 Spa and to Bill Rees regarding the Kapalua Villas Maui. We have reviewed your draft class
action complaints which are virtually identical. We understand that you are not licensed to
14 practice law in either Arizona or Hawaii and were suspended effective July 11, 2018 by the
Presiding Disciplinary Judge of the Arizona Supreme Court while it continued to investigate
15 your mass filing of ADA lawsuits without any factual support. Your draft complaints sent to the
two properties strongly suggest that your conduct is continuing.

16

As a rental program operator, Outrigger Hotels Hawaii ("Outrigger") has been and will
17 remain committed to ADA compliance. However, individually owned rental units at
condominium projects are not subject to the same accessibility requirements as traditional hotels
18 under the ADA. Specifically under §36.406 (c) of the regulations you enclosed:

19 **(2) Exception. Alterations to guest rooms in places of lodging where the guest rooms
are not owned or substantially controlled by the entity that owns, leases, or operates
20 the overall facility and the physical features of the guest room interiors are
controlled by their individual owners are not required to comply with § 36.402 or
21 the alterations requirements in section 224.1.1 of the 2010 Standards.**

22 Outrigger neither owns nor substantially controls the guest rooms which are controlled by
the individual owners. The 2010 standards do not apply to individually owned condominium
23 units that may be placed into a rental program. All of the units at both properties were
constructed prior to the ADA accessibility standards. Both of your letters and draft complaints
24 refer to the facilities as "hotels". They are not, and under the ADA this is critical distinction.

25

26

27

28

Mr. Peter Strojnik
February 5, 2019
Page 2

    We trust this responds to your letter. Our response is without prejudice to our belief that you are attempting to engage in the unauthorized practice of law.

Very truly yours,

Richard M. Rand

RMR:tvf

1

**ADDENDUM D**

2



# PETER STROJNIK

2375 East Camelback Road
Suite 600
Phoenix, Arizona 85016
Telephone: 602-524-6602
e-mail ps@strojnik.com

3

4

5

6

7

8

February 5, 2019

9

10

Richard Rand
By e-mail only RRand@marrjones.com

11

12

Re: *Honua Kai Resort & Kapalua Villas Maui*

13

Dear Mr. Rand:

14

I reviewed your insightful correspondence with interest.

15

As you have gleaned from your due diligence investigation, I am a retired civil rights
attorney and ADA Tester. Our position is that the ADA status of the Hotel is lacking
reference to booking standards of 28 CFR §36.302(e).

16

17

Your correctly admit that both *Honua Kai Resort* and *Kapalua Villas Maui* are operated
by Outrigger. Indeed, 1st party websites are registered to Outrigger (Kapalua) and Honua
Kai through a third party, Perfect Privacy, LLC.

18

19

20



21

22

23

24

25

26

27

28

| .ঃ,  Registrant Contact | |
| --- | --- |
| Name: | PERFECT PRIVACY, LLC |
| Street: | 12808 Gran Bay Parkway West |
| City: | Jacksonville |
| State: | FL |
| Postal Code: | 32258 |
| Country: | US |
| Phone: | +1.5707088780 |
| Email: | efbr4b47y4@networksolutionsprivateregistration.com |

Having admitted control, you then claim that Outrigger "neither owns nor substantially controls" individual units and, thus, they are free of any ADA liability. This is incorrect. 28CFR§36.302(e) provides:

**28CFR§36.302 Modifications in policies, practices, or procedures.**

(a)  *General.* A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

(b)  ...

(c)  ...

(d)  ...

(e)  (1) *Reservations made by places of lodging.* **A public accommodation that** owns, leases (or leases to), or **operates a place of lodging shall**, with respect to reservations made **by any means**, including by telephone, in-person, or **through a third party**—

(i)        Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii)       Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

(iii)      Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv)       Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v)        Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

*(2)  Exception.* The requirements in paragraphs (iii), (iv), and (v) of this section do not apply to reservations for individual guest rooms or other units not owned or substantially controlled by the entity that owns, leases, or operates the overall facility.

(3) *Compliance date.* The requirements in this section will apply to reservations made on or after March 15, 2012.

302(e) is a Catch-22 by design and foresight: When a public accommodation makes a representation of accessibility in order to comply with 302(e), it must do so accurately and truthfully *lest* it exposes itself to a claim for misrepresentation. In order to avoid double jeopardy, a few lodging websites simply state that the hotel is not completely ADA compliant thus exposing itself to a claim by admission. I am waiting for the right case to test these theories.

The official Guidance to the regulation sets forth the scope of what regulators anticipated being required to comply with 28 C.F.R. §36.302(e):

> Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations. For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards. For example, if the door to the "accessible" room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear). This width may not meet current standards but may be adequate for some wheelchair users who use narrower chairs. In many cases, older hotels provide services through alternatives to barrier removal, for example, by providing check-in or concierge services at a different, accessible location.

According to the United States Department of Justice, "[t]o the extent a hotel or other place of lodging makes available such rooms and information to a third-party reservation provider, but the third party fails to provide the information or rooms to people with disabilities in accordance with this section, the hotel or other place of lodging will not be responsible." *See* U.S. Dept. of Justice, Am. With Disabilities Act Title III Regulations,

1  Nondiscrimination on the Basis of Disability by Public Accommodations and in
2  Commercial Facilities, at p. 99 (Sep. 15, 2010).

3  You omit to discuss the salient issue relating to daily damages under the Hawai'i's Chapter
   489, Part I which provides for damages in the sum of $1,000.00 per violation. As for the
4  duration and frequency of damages, please *refer Botosan v. Fitzhugh*, 13 F. Supp.2nd 1047
5  (1998) (quoted with approval in *Lentini v. California Center for the Arts*, 370 F.3d 837
   (9th Cir. 2004) where the Court explained that deterrence to visit a non-compliant facility
6  is a *daily* occurrence entitled Plaintiff to *daily* statutory damages. In *Lentini*, the court
7  stated:

8          The district court found that, "[b]etween January 13, 1999 and February 16,
9          1999, Lentini was deterred from attending seven (7) performances at the
           Center." Under California Civil Code § 52, a court can award actual damages
10         and an amount up to three times the actual damages for a violation of the
           Unruh Act, "but in no case less than [$1,000] . . . ." Cal. Civ. Code § 52(a);
11         cf. id., historical and statutory notes (indicating that in 2001 the statutory
           minimum was increased from $1,000 to $4,000). Following *Botosan v.*
12         *Fitzhugh*, 13 F. Supp. 2d 1047, 1051-52 (S.D. Cal. 1998), which held that
13         this damages provision applies to each incident of deterrence, the district
           court awarded Lentini $7,000 based on the statutory minimum of $1,000 for
14         each of the performances Lentini was deterred from attending as a result of
15         the appellants' discrimination.

16  See also *Arnold v. United Artists Theatre Cir., Inc.*, 866 F.Supp. 433, 439 (N.D.Cal.1994):

17         The Court has concluded that the statutory language of § 54.1 and § 51, and
18         the California case law interpreting it, are inconclusive as to whether a cause
           of action for damages exists under these statutes for incidents of deterrence.
19         Failing to recognize deterrence based damage claims under § 54.3 and § 52
20         would significantly reduce the incentives for compliance with the disability
           access requirements of these laws. Since California courts have held that the
21         California disability access laws manifest an intent on the part of the
           legislature that they be interpreted in a manner that maximizes incentives for
22         compliance, *see Donald [v. Cafe Royale, Inc., 266 Cal. Rptr. 804 (1st*
23         *Dist.1990)]*, 266 Cal. Rptr. at 808-11, the Court concludes that application
           of this canon of construction requires that § 54.1 and § 51, and their
24         respective damages provisions, § 54.3 and § 52, be interpreted as extending
25         to claims based on incidents of deterrence. The Court therefore holds that
           where a plaintiff can prove that violations of applicable California disability
26         access standards deterred her on a particular occasion from attempting to
           attend a place of public accommodation, that plaintiff states a claim for relief
27         under California Civil Code § 54.1 and § 51 and, in particular, for damages,
28         under § 54.3 and § 52.

1   While *Botosan* is based on California's Unruh Civil Rights Act, it is equally applicable
2   through the 9th Circuit, including Hawaii.

3   We do not feel that litigation is the best method of assuring integration. Although we are
    not averse to litigation, we believe that providing appropriate courtesy notice, as we have
4   done, leads to a better, private resolution. Therefore, we propose:



Sincerely,

Peter Strojnik

Encls. ADA Due Diligence Reports

1

**ADDENDUM E**

2

# MARR JONES & WANG

A LIMITED LIABILTY LAW PARTNERSHIP

*Labor and Employment Law*

February 8, 2019

*Via E-mail (ps@strojnik.com)*

Mr. Peter Strojnik
2375 East Camelback Road, Suite 600
Phoenix, Arizona 85016

**Re: Honua Kai Resort & Spa/Kapalua Villas Maui**

Dear Mr. Strojnik:

In response to your February 5, 2019 letter, your printout of information from the internet is neither an investigation nor constitutes due diligence. Since you do not dispute that the units owned by individuals are not subject to ADA accessibility requirements, there is no information to identify on a website.

We reject your interpretation of Hawaii law in this situation. Cases interpreting California law are *not* applicable outside of California much less in Hawaii.

Your letter confirms what we suspected was your ultimate motive; to obtain a quick monetary payment. We reject your offer. You need not communicate with us again. We believe the State Bar of Arizona will be interested to learn of your attempt to continue in other states the same activity that you were suspended for in Arizona.

Very truly yours,

Richard M. Rand

RMR:tvf

31

1

## ADDENDUM F

2

3

# Gmail
by Google

Peter Strojnik <ps@strojnik.com>

4

5

**Letter**
1 message

6

**Richard Rand** <RRand@marrjones.com>                     Fri, Feb 8, 2019 at 7:25 PM
To: "ps@strojnik.com" <ps@strojnik.com>

7

8

Mr. Strojnik:

9

Attached is our response to your most recent letter. No reply is necessary.

10

11

Richard Rand

12

13

*Richard M. Rand, Esq.*
*Marr Jones & Wang*
*A Limited Liability Law Partnership*
*Pauahi Tower*
*1003 Bishop Street, Suite 1500*
*Honolulu, Hawaii 96813*
*Telephone: (808) 536-4900*
*Facsimile: (808) 536-6700*
*Email: rrand@marrjones.com*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28